## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| **JOSEPH BOND** and **CANDY WORKMAN**, individually and on behalf of all others similarly situated, | Case No. |
| *Plaintiffs*, | |
| *v.* | **COMPLAINT – CLASS ACTION** |
| **AMERICAN WORKERS INSURANCE SERVICES, INC.**, a Texas corporation, | **JURY TRIAL DEMANDED** |
| *Defendant.* | |

Plaintiffs Joseph Bond ("Bond") and Candy Workman ("Workman") (collectively "Plaintiffs") bring this Class Action Complaint against Defendant American Workers Insurance Services, Inc. ("Defendant" or "AWIS") to: (1) stop Defendant's practice of placing calls using an "automatic telephone dialing system" ("ATDS") to the cellular telephones of consumers nationwide without their prior express consent; (2) enjoin Defendant from continuing to place autodialed telephone calls to consumers who did not provide their prior express consent to receive them, or who revoked such consent; (3) stop Defendant from calling consumers who are registered on the National Do Not Call Registry; and (4) obtain redress for all persons injured by Defendant's conduct. Plaintiffs also

seek an award of statutory damages to the members of the Classes, plus court costs and reasonable attorneys' fees.

Plaintiffs, for their complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## PARTIES

1.    Plaintiff Bond is a natural person over the age of eighteen (18) and a citizen of the State of Georgia. Plaintiff Bond resides in Atlanta, Georgia.

2.    Plaintiff Workman is a natural person over the age of eighteen (18) and a citizen of the State of West Virginia. Plaintiff Workman resides in Fayetteville, West Virginia.

3.    Defendant American Workers Insurance Services, Inc. is a corporation organized in and existing under the laws of the State of Texas, with its principal place of business located in Houston.

## JURISDICTION & VENUE

4.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227, et seq., a federal statute. This Court also has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332 ("CAFA"), because the

alleged Classes consists of over 100 persons, there is minimal diversity, and the claims of the class members when aggregated together exceeds $5 million. Further, none of the exceptions to CAFA applies.

5.     This Court has personal jurisdiction over AWIS because it solicits significant business in this District, has entered into business contracts in this District, and a significant portion of the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

6.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant solicits a significant amount of consumer business within this District, and because a significant portion of the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

## COMMON ALLEGATIONS OF FACT

7.     Defendant AWIS is a licensed insurance agency that provides health insurance to tens of thousands of customers in over 40 states. According to its website, AWIS offers limited group insurance benefits to members of the National Association of Preferred Providers (NAPP).[1]

---

[1] http://www.awisusa.com/resources/AwisFAQ.

8.     Unfortunately for consumers, AWIS casts its marketing net too wide. That is, in an attempt to aggressively promote its business and to generate leads for its financial products, Defendant conducted (and continues to conduct) a wide-scale telemarketing campaign, targeting at least the 41 States where it serves as a licensed insurance agency, that repeatedly makes unsolicited autodialed phone calls to consumers' telephones including cellular telephones all without any prior express consent to make such calls.

9.     To make matters worse, AWIS places these calls to telephones using an ATDS without consumers' prior written express consent—which violates the TCPA. AWIS also places calls to telephones of consumers who have registered their phone numbers on the National Do Not Call Registry.

10.     The Telephone Consumer Protection Act 47 U.S.C. § 227, et seq. ("TCPA") and its implementing regulations, 47 C.F.R. §64.1200, *et seq*. prohibit companies and persons, such as Defendant, from placing calls using an ATDS ("autodialed calls") to cellular telephones without first obtaining prior express consent. Defendant has violated, and continues to violate, the TCPA and its regulations by placing autodialed calls to cellphone subscribers who have not given prior express consent, orally or in writing, to receive such calls.

11.     In an effort to obtain leads for its services, AWIS made (or directed to be made on its behalf) autodialed calls to the cellular telephones of Plaintiffs and other members of the class without first obtaining express consent to do so—all in violation of the TCPA.

12.     The TCPA was enacted to protect consumers from unauthorized calls exactly like those alleged in this Complaint: autodialed and/or prerecorded calls placed to cellphone numbers without each consumer's prior express written consent.

13.     By making the telephone calls at issue in this Complaint, Defendant caused Plaintiffs and the members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the receipt of such calls as well as a loss of value realized for any monies that consumers paid to their wireless carriers for the receipt of such calls. Furthermore, the calls interrupted Plaintiffs' and the other Class members' use and enjoyment of their cellphones, including the related data, software, and hardware components. Defendant also injured the Plaintiffs and Class members by causing wear and tear on their phones, consuming battery life, and appropriating cellular minutes and data.

14.     At no time did Defendant obtain prior express consent from the Plaintiffs or any of the Class members orally or in writing to receive autodialed calls.

15.     In making the phone calls at issue in this Complaint, Defendant and/or its agents utilized an ATDS. Specifically, the hardware and software used by AWIS and/or its agents has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendant's automated dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous calls simultaneously, without human intervention.

16.     Defendant knowingly made, and continues to make, telemarketing calls without the prior express consent of the recipients. As such, Defendant not only invaded the personal privacy of Plaintiffs and members of the putative Classes, it also intentionally and repeatedly violated the TCPA.

17.     Defendant was, and is, aware that the autodialed calls described herein were made to consumers like Plaintiffs who have not consented to receive them.

18.     By making unauthorized autodialed calls as alleged herein, AWIS has caused consumers actual harm, including the aggravation, nuisance and invasions

of privacy that result from the receipt of such calls, the wear and tear on their cellphones, consumption of battery life, lost cellular minutes, loss of value realized for monies paid to their wireless carriers for the receipt of such calls, and in the form of the diminished use, enjoyment, value, and utility of their telephones and telephone plans. Furthermore, Defendant made the calls knowing they interfered with Plaintiffs and the other Class members' use and enjoyment of, and the ability to access, their cellphones, including the related data, software, and hardware components.

19.    To the extent any third party made the calls, the third party acted on behalf of Defendant, at Defendant's direction and control, for Defendants' knowing benefit, and with Defendant's approval, and/or Defendant ratified the making of any such calls.

20.    To redress these injuries, Plaintiffs, on behalf of themselves and a Class of similarly situated individuals, bring this suit under the TCPA, which prohibits unsolicited prerecorded and/or autodialed calls to telephones. On behalf of the Classes, Plaintiffs seek an injunction requiring Defendants to cease all unauthorized autodialed calling activities and an award of statutory damages to the class members, together with pre and post-judgment interest, costs and reasonable attorneys' fees.

## FACTS SPECIFIC TO PLAINTIFF BOND

21.     Plaintiff Bond is the subscriber to and customary user of the personal cellular telephone number ending in 1282.

22.     On June 19, 2019, Plaintiff received a call from the phone number (706) 944-9072.

23.     After answering the call, Bond was met with "dead air" for several seconds before he was apparently connected to a live representative.

24.     The representative identified himself as J.J., who stated that he was from the "national health enrollment center."

25.     After J.J. spoke to Bond about health insurance offers for several minutes, Bond was transferred to an Erland Hernandez, who identified himself as representing American Workers Insurance Services.

26.     In an effort to identify who was calling him, Bond asked to receive an email and provided his email address. Plaintiff received an email from noreply@awisplatform.com, bearing AWIS' logo and informing Bond that his "enrollment application" had been completed.

27.     A month later, Bond received another call on July 16, 2019, this time from (478) 777-5013.

28.    When he answered the phone, Bond said "hello" three times before hearing a "click" and being connected with a live representative.

29.    To the best Plaintiff could hear, the representative identified himself as "George" from the "national health benefit center."

30.    George discussed several insurance plans with Bond, and Bond again provided an email address to obtain information about who was calling him. George informed Bond that he was already in "the system," which George described as an error. George then said he would try to figure out the issue and call Bond again the following day.

31.    Plaintiff Bond does not have a relationship with Defendant, has never provided his telephone number to Defendant, and has never requested that Defendant place prerecorded and/or autodialed calls to him or offer him its services. Plaintiff Bond has never provided any form of prior express written or oral consent to Defendant to place prerecorded and/or autodialed calls to him and has no other relationship with Defendant. Simply put, Bond never provided any prior express written or oral consent to be called at all.

## FACTS SPECIFIC TO PLAINTIFF WORKMAN

32.    Plaintiff Workman is the subscriber to and customary user of the personal cellular telephone number ending in 6987.

33.     Plaintiff Workman registered her cellular phone number on the National Do Not Call Registry on or around April 10, 2009.

34.     On August 13, 2019, Plaintiff received a call from the phone number (813) 566-0836.

35.     When she answered the phone, Workman said "hello" several times and was met with a long pause before hearing a person on the other line.

36.     The representative identified herself as "Janell" from "First Health Care" and "AWIS." Janell said that she was going to sell Plaintiff Workman a medical and/or dental insurance plan in which Workman had supposedly been previously enrolled.

37.     Janell gave Workman her contact information, including an office number (1-954-246-4385, extension 808) and a cell phone number (954-294-9589).

37.     After her conversation with Janell, Plaintiff Workman was connected to another representative named "JoAnne" in the "verification department," who asked for Workman's email address. Plaintiff Workman thereafter received an email from noreply@awisplatform.com, bearing AWIS' logo and informing Workman that her "enrollment application" had been completed.

38.     The next day, on approximately August 14, 2019, Plaintiff Workman received another call from Janell, this time from Janell's cell phone number.

39.     Workman also received a number of text messages from Janell, again attempting to sell an AWIS plan referred to as "proshare."

40.     Plaintiff Workman does not have a relationship with Defendant, has never provided her telephone number directly to Defendant, and never requested that Defendant place calls or text messages of any kind to her or offer her its services. Plaintiff Workman has never provided any form of prior express written or oral consent to Defendant to place prerecorded and/or autodialed calls to her, or to place calls or text messages to her despite listing her number on the National Do Not Call Registry, and she has no business or other relationship with Defendant.

In summary, Bond received two autodialed calls, Workman received one autodialed call and a live call the next day. Workman's phone number had been on the National DNC since April 2019.

## CLASS ACTION ALLEGATIONS

41.     Plaintiffs Bond and Workman bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of themselves and the Classes defined as follows:

**Autodialed No Consent Class**: All persons in the United States who from four years prior to the filing of the initial complaint in this action

to the present: (1) Defendant, or a third person acting on behalf of Defendant, called; (2) on the person's cellular telephone; (3) using an autodialer as defined in the TCPA; (4) for the purpose of selling AWIS's products and services; and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it supposedly obtained prior express consent to call the Plaintiffs.

**Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of the initial complaint in this action to the present: (1) Defendant, or a third person acting on behalf of Defendant, called more than one time on his/her cellular telephone; (2) within any 12-month period; (3) where the cellular telephone number had been listed on the National Do Not Call Registry for at least thirty (30) days; (4) for the purpose of selling AWIS's products and services; and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it supposedly obtained prior express consent to call Plaintiff Workman.

42.     The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assignees of any such excluded persons. Plaintiffs anticipate the need to amend the class definitions following appropriate discovery.

43. **Numerosity:** The exact number of members within each Class is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has placed pre-recorded calls to thousands of consumers who fall into the defined Classes. Members of the Classes can be objectively identified through reference to Defendant's records, consumer phone records, and other evidence to be gained in discovery.

44. **Typicality:** Plaintiffs' claims are typical of the claims of other members of the Classes, in that Plaintiffs and the members of the Classes sustained damages arising out of Defendants' uniform wrongful conduct.

45. **Adequate Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the Classes and have retained counsel competent and experienced in complex class actions. Plaintiffs have no interests antagonistic to those of the Classes, and Defendant has no defenses unique to either Plaintiff.

46. **Commonality and Predominance:** There are several questions of law and fact common to the claims of Plaintiffs and the Classes, and those questions predominate over any questions that may affect individual members of

the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)    Whether Defendant's conduct violated the TCPA;

(b)    Whether Defendant systematically made telephone calls to individuals who did not previously provide Defendant and/or its agents with their prior express consent;

(c)    Whether the calls were made with the use of an ATDS;

(d)    Whether Defendant systematically made repeated telephone calls to consumers whose telephone numbers were registered with the National Do Not Call Registry for at least thirty (30) days;

(e)    Whether a third party made the calls on Defendant's behalf;

(f)    Whether the Plaintiffs and the other members of the Class are entitled to statutory damages; and

(g)    Whether Defendant acted willfully so as to require an award of treble damages.

47.    **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable, and the damages suffered by the individual members of the Classes

will likely be relatively small, especially given the burden and expense of

individual prosecution of the complex litigation necessitated by Defendant's

actions. Thus, it would be virtually impossible for the individual members of the

Classes to obtain effective relief from Defendant's misconduct. Even if class

members could sustain such individual litigation, it would still not be preferable to

a class action, because individual litigation would increase the delay and expense

to all parties due to the complex legal and factual controversies presented in this

Complaint. By contrast, a class action presents far fewer management difficulties

and provides the benefits of single adjudication, economy of scale, and

comprehensive supervision by a single Court. Economies of time, effort and

expense will be fostered and uniformity of decisions ensured.

### FIRST CAUSE OF ACTION
**Violation of the TCPA, 47 U.S.C. § 227, *et seq.***
**(On behalf of Plaintiffs and the Autodialed No Consent Class)**

48.     Plaintiffs incorporate by reference the foregoing allegations as if fully

set forth herein.

49.     Defendant AWIS, either on its own or through its agents or other third

parties acting on its behalf, made unsolicited and unwanted telemarketing calls to

cellular telephone numbers belonging to Plaintiffs and the other members of the

Autodialed No Consent Class—without their prior express written consent—in an effort to generate leads for Defendants' products and services.

50.     Defendant failed to obtain any prior express consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i), a "clear and conspicuous" disclosure informing the person signing that:

> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
>
> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

51.     Further, Defendant made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*. Defendant utilized equipment that made the telephone calls to Plaintiffs and other members of the Autodialed No Consent Class simultaneously and without human intervention. Discovery will reveal the technological capacity of Defendant's system.

52.     By making unsolicited telephone calls to Plaintiffs and members of the Class's cellular telephones without prior express consent, and by utilizing an ATDS while doing so, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

53.     As a result of Defendant's unlawful conduct, Plaintiffs and the members of the Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular telephones and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

54.     Should the Court determine that AWIS's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiffs and the other members of the Class.

## SECOND CAUSE OF ACTION
### Violation of the TCPA, 47 U.S.C. § 227, *et seq.*
### (On behalf of Plaintiff Workman and the Do Not Call Registry Class)

55.     Plaintiff Workman incorporates by reference the foregoing allegations as if fully set forth herein.

56.     47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy and their right to avoid receiving telephone solicitation to which they object.

57.     The TCPA's implementing regulations, 47 C.F.R. § 64.1200(c),

provide that "[n]o person or entity shall initiate any telephone solicitation" to "[a]

residential telephone subscriber who has registered his or her telephone number on

the national do-not-call registry of persons who do not wish to receive telephone

solicitations that is maintained by the federal government."

58.     47 C.F.R. § 64.1200(e), in turn, states that § 64.1200(c) and (d) "are

applicable to any person or entity making telephone solicitations or telemarketing

calls to wireless telephone numbers to the extent described in the Commission's

Report and Order, CG Docket No. 02-278, FCC 03-153, '*Rules and Regulations*

*Implementing the Telephone Consumer Protection Act of 1991*,'" which the Report

and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone
> solicitations to residential telephone subscribers must comply with
> time of day restrictions and must institute procedures for maintaining
> do-not-call lists. For the reasons described above, we conclude that
> these rules apply to calls made to wireless telephone numbers. We
> believe that wireless subscribers should be afforded the same
> protections as wireline subscribers.[2]

59.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity

shall initiate any call for telemarketing purposes to a residential telephone

---

[2] 68 Fed. Reg. 44143, 44166 (July 25, 2003).

subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call

request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

60.    Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to wireless telephone subscribers such as Plaintiff Workman and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government, for at least thirty (30) days at the time the calls were made. These consumers requested to not receive calls from Defendant, as set forth in 47 C.F.R. § 64.1200(d)(3).

61.    Defendant also violated 47 C.F.R. § 64.1200(d) by failing to have a written policy of dealing with do not call requests, by failing to inform or train its personnel regarding any do not call list, and by failing to record and honor do not call requests.

62.    Defendant made more than one unsolicited telephone call to Plaintiff Workman and other members of the Do Not Call Registry Class within a 12-month

period without their prior express consent to receive such calls. Plaintiff Workman and other members of the Do Not Call Registry Class never provided any form of consent to receive telephone calls from Defendant, and/or Defendant does not have a current record of consent to place telemarketing calls to them

63.     Defendant violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff Workman and the Do Not Call Registry Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

64.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Workman and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff Workman and the Do Not Call Registry Class suffered actual damages and, under 47 U.S.C. § 227(c), are each entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

65.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Bond and Workman, on behalf of themselves and the Classes, pray for the following relief:

    A.    An order certifying the Classes as defined above, appointing Plaintiffs Joseph Bond and Candy Workman as the representatives of the Classes and appointing their counsel as Class Counsel;

    B.    An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater all to be paid into a common fund for the benefit of the Plaintiffs and the Class Members;

    C.    An order declaring that Defendant's actions, as set out above, violate the TCPA;

    D.    An injunction requiring Defendant to cease all unsolicited autodialed calling activities, and otherwise protecting the interests of the Classes;

    E.    An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above;

    F.    An award of pre- and post-judgment interest; and

G.     Such other and further relief that the Court deems reasonable

and just.

## JURY DEMAND

Plaintiffs request a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: January 21, 2020          **JOSEPH BOND** and **CANDY WORKMAN**, individually and on behalf of all others similarly situated,

By:   /s/ Jennifer Auer Jordan
       One of Plaintiff's Attorneys

Jennifer Auer Jordan
jordan@ssjwlaw.com
Georgia Bar Number: 027857
Shamp Speed Jordan Woodward LLC
1718 Peachtree Street NW, Suite 660
Atlanta, Georgia 30309
Telephone: (404) 893-9400

Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Attorneys for Plaintiff and the Class
*Pro Hac Vice to be sought